# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARK D. GRIFFIS, )
)
Plaintiff/Counterclaim )
Defendant, )
)
v. ) C.A. No. N25C-10-249 CLS
)
DECISION LOGIC BUYER, INC., )
)
Defendant/Counterclaim )
Plaintiff. )

Date Submitted: December 18, 2025
Date Decided: March 30, 2026

*Upon Consideration of the Plaintiff's Motion to Dismiss*.
**GRANTED.**

## <u>MEMORANDUM OPINION</u>

Travis S. Hunter, Esquire of RICHARDS, LAYTON & FINGER, P.A., *Attorney for Mark D. Griffis.*

Jarrett W. Horowitz, Esquire of CONNOLLY GALLAGHER LLP, *Attorney for Decision Logic Buyer, Inc.*

**SCOTT, J.**

This case arises from a contract dispute concerning the Plaintiff and Counterclaim-Defendant's refusal to release escrow funds to indemnify Defendant and Counterclaim-Plaintiff as provided by a purchase agreement. Before the Court is Plaintiff and Counterclaim-Defendant's Motion to Dismiss Counts II and III of Defendant and Counterclaim-Plaintiff's Counterclaim under Superior Court Civil Rule 12(b)(6). For the following reasons, the motion is **GRANTED**.

FACTUAL AND PROCEDURAL BACKGROUND

## I.     The Parties

Plaintiff and Counterclaim-Defendant, Mark D. Griffis ("Griffis"), is a resident of Nebraska.[1]

Defendant and Counterclaim-Plaintiff, Decision Logic Buyer, Inc. ("Decision Logic"), is a Delaware corporation with its principal place of business in Nebraska.[2]

## II.     The Purchase Agreement and Escrow Agreement

This matter stems from a Unit Purchase Agreement ("UPA") entered into by Griffis and Decision Logic on February 28, 2025.[3] Under the UPA, Decision Logic agreed to purchase Knowledge Management Systems, LLC (the "Company") from Griffis for $23 million.[4]

---

[1] Compl. ¶ 5, D.I. 1.
[2] *Id.* ¶ 6.
[3] *Id.* ¶ 1; Mark Griffis' Mot. to Dismiss Counts II and III of Def.'s Countercls., Ex. A ("UPA"), D.I. 11 ("MTD").
[4] Compl. ¶ 1; Decision Logic Buyer, Inc.'s Answ. and Affirmative Defenses to Compl. and Countercls. ¶ 8, D.I. 6 ("Countercl.").

During negotiations for the UPA, Decision Logic alleges that it was concerned about the Company's pre-closing tax liability given that Griffis "failed for years to register, collect, and remit state sales taxes in multiple states where [the Company] had sales tax nexus[.]"[5]  Decision Logic alleges that Griffis was aware of the Company's potential tax liability and agreed that the issues "required resolution."[6] Indeed, in March 2023, the Company's President and Chief Operating Officer, Amanda Woolege, purportedly informed Griffis that it would be in the Company's best interests to file Voluntary Disclosure Agreements ("VDAs") "for previous tax non-compliance."[7]

To address Decision Logic's concerns, Section 5.3 of the UPA contains a provision requiring Griffis to "indemnify and hold harmless the Buyer . . . from and against any and all Losses[,]" including taxes imposed on the Company during the Pre-Closing Period.[8]  Because Decision Logic remained responsible for Post-Closing tax liabilities, it was required to inform Griffis of any "notice of . . . pending or threatened federal, state, local, or foreign tax audits or assessments with respect to the Company related to any Pre-Closing Tax Period[.]"[9]

---

[5] Countercl. ¶¶ 9, 13.
[6] *Id.* ¶¶ 10–14.
[7] *Id.* ¶ 11.
[8] *Id.* ¶ 15;  UPA at 46.
[9] UPA at 47.

Further, Section 5.3(c)(ii) gives Griffis "the right to control and resolve any Tax claim relating to any taxable period that ends on or before the Closing Date at the Seller's cost and expense" unless Decision Logic "shall have the right, at its own expense, to participate in, and consult with [Griffis] regarding any such Tax claim."[10] The UPA gives Decision Logic the right to control and resolve any Tax claim where: (1) it "agreed in writing to forgo any indemnification under [the UPA] with respect to such issue[,]" or (2) "where [Griffis] has failed to 'assume control in accordance with [the Tax Control provision of the UPA . . . provided, prior to any settlement or compromise, [Decision Logic] shall obtain [Griffis's] written consent, which shall not be unreasonably withheld, conditioned, or delayed."[11]

Consequently, in connection with the UPA, the parties executed an Escrow Agreement, whereby Griffis agreed to place $500,000 in an Escrow Account as "a simple path [for Decision Logic] to recover indemnifiable sales tax liabilities[.]"[12] "In the event Buyer requests indemnification, funds are to be released after the execution of a 'Joint Instruction' from the parties."[13]

---

[10] UPA at 48.
[11] Compl. ¶ 12;  UPA at 48.
[12] *Id.* ¶ 9;  Counterclaim ¶¶ 8, 16;  UPA Ex. B ("Escrow Agreement").
[13] Compl. ¶ 9.

## III. Decision Logic Incurs Pre-Closing Tax Liability

In April 2025, Woolege gave Griffis an "engagement letter from a sales tax compliance vendor, which detailed specific steps that would be taken by the Company to address the state tax noncompliance, including obtaining VDAs in Ohio Tennessee, and Texas."[14] In June 2025, Woolege also provided Griffis with an estimate of the potential tax liability in Tennessee.[15] Decision Logic alleges that Griffis was "apprised . . . of the ongoing state tax issues, the remediation process, the VDAs, and amounts" owed for noncompliance.[16]

The VDAs were executed and by September 2025, Decision Logic paid $171,666.20 in sales tax noncompliance and fees to Ohio and Tennessee during the Pre-Closing Period to bring the Company's state taxes for 2025 current.[17] Decision Logic also anticipates an additional payment of about $200,000 to Texas.[18] Griffis allegedly did not intervene or disagree with the taxes before Decision Logic incurred the liability for sales taxes in Ohio and Tennessee.[19] Therefore, on September 15, 2025, Decision Logic requested a Joint Instruction from Griffis to release

---

[14] Countercl. ¶ 21.
[15] *Id.* ¶ 22.
[16] *Id.* ¶ 23.
[17] *Id.* ¶¶ 18–19.
[18] *Id.* ¶¶ 19–20.
[19] *Id.* ¶ 24.

$171,666.20 from the Escrow Account for indemnifiable Pre-Closing Period tax liability.[20]

## IV. Griffis Refuses to Execute the Joint Instruction

On October 1, 2025, Griffis informed Decision Logic that he would not execute the Joint Instruction because Decision Logic forfeited its right to indemnification by unilaterally negotiating the VDAs in violation of Section 5.3(c)(ii) of the UPA and waived its right by failing to properly notify Griffis under Section 5.3(c)(i) of the UPA.[21] Griffis also asserts that the computations of tax liability in the VDAs were incorrect and included Post-Closing tax liabilities.[22] Decision Logic disagrees, claiming that "the UPA did not require it to take any further steps to secure Griffis's cooperation with indemnification[.]"[23]

To address the "discrepancies in the computations of the VDAs[,]" Griffis emailed Buyer's board members to discuss.[24] Members of Decision Logic's board set a meeting for October 24, 2025, to address Griffis's concerns.[25] The meeting never happened, however, as Griffis filed a Complaint against Decision Logic "mere hours before the meeting was set to take place."[26] Decision Logic alleges that Griffis

---

[20] *Id.* ¶ 25.
[21] *Id.* ¶ 26; Compl. ¶ 15.
[22] Compl. ¶¶ 15–18.
[23] Countercl. ¶ 27.
[24] Compl. ¶ 16; Countercl. ¶ 28.
[25] Countercl. ¶ 28.
[26] *Id.* ¶ 28.

not only violated the UPA, but that the refusal to execute the Joint Instruction constitutes bad faith.[27]

## V. Procedural History

On October 24, 2025, Griffis filed the Complaint underlying the present motion, seeking declaratory judgment and alleging that Decision Logic breached the UPA.[28] On November 14, 2025, Decision Logic filed its Answer and Counterclaims, denying that it breached the UPA and asserted the following counterclaims: breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment.[29]

On December 4, 2025, Griffis filed a Motion to Dismiss Decision Logic's claims for breach of the implied covenant and declaratory judgment.[30] Decision Logic filed a Response in opposition on December 18, 2025.[31] The matter is now ripe for decision.

## STANDARD OF REVIEW

Upon a motion to dismiss under Superior Court Civil Rule 12(b)(6), the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all

---

[27] *Id.* ¶ 29.
[28] *See generally* Compl.
[29] *See generally* Countercl.
[30] *See generally* MTD.
[31] *See generally* Def.'s Resp. to Pl.'s Mot. to Dismiss Count II and III of Def.'s Countercls., D.I. 15 ("Def.'s Resp.").

reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[32] The Court does not, however, accept "conclusory allegations that lack specific supporting factual allegations."[33] But "it is appropriate . . . to give the pleader the benefit of all reasonable inferences that can be drawn from the pleading."[34] Generally, when considering a Rule 12(b)(6) motion to dismiss, the Court "may not consider matters outside the complaint"[35] unless the documents "are integral to or incorporated by reference[.]"[36]

## DISCUSSION

Griffis seeks dismissal of Counts II and III of Decision Logic's Counterclaim. First, he argues that Decision Logic fails to state a claim for breach of the implied covenant of good faith and fair dealing because the UPA expressly covers Decision Logic's "ability to enter VDAs with local tax authorities and Mr. Griffis's duty to execute a joint instruction."[37] Decision Logic concedes that the UPA expressly grants Griffis discretion, but claims that Delaware law permits a claim for the

---

[32] *ET Aggregator, LLC v. PFJE AssetCo Holdings LLC*, 2023 WL 8535181, at *6 (Del. Super. Dec. 8, 2023); *see also World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, 2015 WL 6772638, at *6 (Del. Super. Nov. 2, 2015).

[33] *ET Aggregator, LLC*, 2023 WL 8535181, at *6 (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[34] *TrueBlue Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *2 (Del. Super. Sept. 25, 2015) (internal quotation marks omitted).

[35] *ET Aggregator, LLC*, 2023 WL 8535181, at *6 (quoting Super. Ct. Civ. R. 12(b)).

[36] *Id.* at *6 (quoting *In re Santa Fe Pac. Corp. S'Holder Litig.*, 669 A.2d 59, 70 (Del. 1995)).

[37] MTD at 3.

implied covenant where the contract "omits standards governing [such] discretion."[38]

Second, Griffis avers that declaratory judgment is "overripe" because it "serves no independent purpose aside from restating Decision Logic's breach of contract claim."[39] On the other hand, Decision Logic proffers that the claim is necessary to "trigger escrow disbursement absent a joint instruction, and to avoid serial litigation over recurring pre-closing tax liabilities."[40]

## I.     The Counterclaim Fails to Identify a Contractual Gap Such that the Covenant of Good Faith and Fair Dealing Applies

Griffis argues that dismissal is appropriate on Decision Logic's counterclaim for breach of the implied covenant because the UPA expressly covers the conduct at issue. The implied covenant of good faith and fair dealing is inherent in all contracts[41] and "'best understood as a way of implying terms in the agreement,' whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions."[42] The implied covenant "does not establish a free-floating

---

[38] Def.'s Resp. at 3.
[39] MTD at 6.
[40] Def.'s Resp. at 5.
[41] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 101 (Del. 1992) (citing *Blish v. Thompson Automatic Arms Corp.*, 64 A.2d 581, 597 (Del. 1948)).
[42] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (citing *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 443 (Del. 1996); *Glenfed Fin. Corp., Commercial Fin. Div. v. Penick Corp.*, 647 A.2d 852, 858 (Del. 1994)).

requirement that a party act in some morally commendable sense," nor does it "require that a party have acted in subjective good faith."[43]

The implied covenant only applies when the underlying contract is "truly silent" on the issue.[44] "The covenant does not allow for judicial rewriting of contracts, '[p]arties have a right to enter into good and bad contracts, the law enforces both.'"[45] Thus, "[i]t does not apply when the contract addresses the conduct at issue."[46] The party claiming the covenant has been breached bears the burden to identify the contractual gap.[47]

Decision Logic's counterclaim for breach of the implied covenant alleges that the "UPA implies, but does not expressly include, a term that Griffis will not exercise his discretion to sign a joint instruction in bad faith to deny Decision Logic the bargained-for fruits of the UPA, i.e., indemnification."[48] The Court disagrees.

---

[43] *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 182–83 (Del. Ch. 2014) (citing *Gerber v. Enter. Pros. Holdings, LLC*, 67 A.3d 400, 418 (Del. 2013); *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 442, 444 (Del. Ch. 2012)).

[44] *Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) (quoting *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1033 (Del. Ch. 2006)) (internal quotation marks omitted).

[45] *I Am Athlete, LLC v. IM EnMotive, LLC*, 2024 WL 4904685, at *8 (Del. Super. Nov. 27, 2024) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010)).

[46] *Id.* (quoting *Nationalwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 896 (Del. 2015)) (internal quotation marks omitted).

[47] *Id.* (citing *Miller v. HCP & Co.*, 2018 WL 656378, at *2 (Del. Ch. 2018), *aff'd sub nom.*, 194 A.3d 908 (Del. 2018)).

[48] Countercl. ¶ 40.

Decision Logic cites various decisions supporting its assertion that "Delaware courts uphold implied covenant claims where . . . a contract confers discretion yet omits standards governing its exercise."[49]  While the Court agrees with Decision Logic, the facts at bar are distinguishable from those cases given the nature of the parties' relationship that the UPA creates.  In other words, the UPA is not representative of a continuing business entity relationship that warrants the application of the *Baldwin* Court's holding under the facts of this case.[50]  Further, the indemnification provision in *Baldwin* permitted indemnification "to the fullest extent permitted by the" Delaware Limited Liability Company Act, qualified by a determination as to whether the indemnitee acted in good faith and in the best interests of the company.[51]  Therefore, it was implicit in the agreement that the determination would not be made in bad faith.[52]

Here, however, Section 5.3 of the UPA is not governed by the Delaware Limited Liability Company Act and there is a clear standard for Decision Logic's right to indemnification.  The provisions of Section 5.3 of the UPA state the indemnifiable losses, the control Griffis has regarding the indemnifiable losses

---

[49] Def.'s Resp. at 3–4 (citing *Baldwin v. New Wood Resources LLC*, 283 A.3d 1099 (Del. 2022); *Dieckman v. Regency GP LP*, 155 A.3d 358 (Del. 2017);  *Wilmington Leasing, Inc. v. Parrish Leasing Co., LP*, 1996 WL 560190, at *1 (Del. Ch. Sept. 25, 1996);  *Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *1 (Del. Ch. May 29, 2020)).
[50] *Baldwin*, 283 A.3d at 1118–21.
[51] *Id.* at 1118.
[52] *Id.*

during the Pre-Closing Period, when Decision Logic may assume control, and Griffis's role and obligations if he withholds consent to Decision Logic assuming control of a tax liability settlement or compromise during the Pre-Closing Period. These provisions leave no room for the Court to imply additional terms governing the same subject matter. The UPA is not truly silent on the issue of the obligations governing the rights to indemnification and the execution of a Joint Instruction to release the escrow funds. Accordingly, the terms of the UPA govern whether Griffis breached the agreement.

Thus, Count II warrants dismissal.

## II. The Claim for Declaratory Judgment Fails

Decision Logic's claim for declaratory judgment fails because it is duplicative. A declaratory judgment "is a statutory action . . . meant to provide relief in situations where a claim is ripe but would not support an action under common-law[.]"[53] "[T]here is no need for a declaratory judgment . . . where a claimant merely has repackaged in the language of a declaration an adequately[]pleaded affirmative count[.]"[54] Delaware courts reject a declaratory judgment claim if it is "wholly and

---

[53] *Loeffler v. MNTN, Inc.*, 2025 WL1256148, at *4 (Del. Super. Apr. 28, 2025) (quoting *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *29 (Del. Ch. Nov. 16, 2024)) (internal quotation marks omitted).

[54] *Id.* (quoting *Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460, at *15 (Del. Super. Sept. 29, 2021)).

completely duplicative."[55]   To survive dismissal, "a declaratory count must be 'distinct' from the affirmative counts in the complaint such that a decision on the affirmative counts would not resolve the declaratory count."[56]

The Court finds Griffis's argument persuasive.  The declaratory judgment claim seeks a ruling on the same legal issue addressed in Count I—whether Decision Logic is entitled to indemnification because Griffis violated the UPA by failing to execute a joint instruction.[57]  The Court's resolution for Count I would resolve the declaratory judgment claim given that a finding that Griffis breached the UPA would trigger the disbursement of the escrow funds.[58]  Consequently, the declaratory judgment claim adds nothing new, it is duplicative, and dismissal is warranted.

To the extent Decision Logic avers that a declaration is necessary for additional indemnifiable losses in the future, such a claim is speculative and not ripe for decision.  The Counterclaim does allege that Decision Logic will pay around $200,000 to Texas in sales tax noncompliance for the Pre-Closing Period, but there

---

[55] *DuPont De Nemours, Inc. v. Hemlock Semiconductor Operations, LLC*, 2024 WL 3161799, *11 (Del. Super. June 10, 2024) (quoting *IP Network Solutions, Inc. v. Nutanix, Inc.*, 2022 WL 369951, at *7 (Del. Super. Feb. 8, 2022)) (internal quotation marks omitted).

[56] *Blue Cube Spinco LLC*, 2021 WL 4453460, at *15 (citing *Sweetwater Point, LLC v. Kee*, 2020 WL 6561567, at *12, *17 (Del. Super. Nov. 5, 2020);  *Trusa v. Nepo*, 2017 WL 1379594, at *8 n.71 (Del. Ch. Apr. 13, 2017);  *Veloric v. J.G. Wentworth, Inc.*, 2014 WL4639217, at *20 (Del. Ch. Sept. 18, 2014)).

[57] *Compare* Countercl. ¶¶ 32–35 *with id.* ¶¶ 44–46.

[58] *See e.g., ESG Capital Partners II, LP v. Passport Special Opportunities Master Fund, LP*, 2015 WL 9060982, at *15 (concluding that in making "the necessary determinations in the course of resolving the claim for breach of contract[,]" declaratory judgment did "not add anything"); *Loeffler*, 2025 WL 1256148, at *4–5.

are no allegations that Griffis will not execute a joint instruction for those taxes. Moreover, the possibility that Griffis will refuse to indemnify Decision Logic for the taxes in Texas, on its own, is too speculative to conclude that "Decision Logic will be forced to return to court each time Griffis flouts the UPA's indemnification requirements."[59] "If for some currently unforeseeable reason it turns out later that the declaratory judgment claim was not superfluous, it can be reinstated without any prejudice" to Griffis.[60]

Accordingly, dismissal as to Count III is appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiff and Counterclaim-Defendant Mark D. Griffis's Motion to Dismiss is **GRANTED.**

**IT IS SO ORDERED.**

*/s/ Calvin Scott*
Judge Calvin L. Scott, Jr.

---

[59] Def.'s Resp. at 6.
[60] *ESG Cap. Partners II, LP*, 2015 WL 9060982, at *15.